Good morning, Gary Burcham on behalf of Petitioner Anthony Wafer. There are two reasons why this Court should reverse the District Court's finding that Mr. Wafer's federal habeas petition was untimely. First, statutory tolling, and second, equitable tolling. Unless the Court has any questions concerning the statutory tolling issue that was fully briefed, I'd like to begin this morning with the equitable tolling. Well, how can you have a statutory tolling in light of the recent Supreme Court opinion, I'm trying to think of the name of it, that overruled our decision saying untimely petitions can still bar? Pace. Pace, yes. In light of Pace, how can you have statutory tolling? Well, the reason why we can have statutory tolling in this particular case is because the California Supreme Court's order denying the second habeas petition with the N. Ray Clark site was ambiguous. As I set forth in the opening brief and in the reply, Clark is a 62-page lengthy California Supreme Court opinion that deals not just with the timeliness bar, but also with the successive petition bar and also with the piecemeal litigation bar. And when the California Supreme Court denied Mr. Wafer's petition with a non-pinpoint site, N. Ray Clark, that was an ambiguous site. Don't our cases recognize a citation to N. Ray Clark as a timeliness determination? Yes, ma'am. Some do, but also cases from this court have recognized Clark for reference to the other bars, in particular the successive petition bar, Carey v. Saffold, Sarah Ponds v. Calderon, Calderon v. District Court. Those are three cases where this court cited Clark not for the timeliness bar, but for the successive petition bar. And so it's our position that because the California Supreme Court failed to designate how it was relying upon Clark, that created an ambiguous denial, and pursuant to the well-settled law of the U.S. Supreme Court, this court, every circuit that says that for a procedural bar to be in place, the basis for the denial must be clear and unambiguous. The non-pinpoint site, N. Ray Clark, is not enough in this case for the District Court to have decided that the denial was based on timeliness and not based upon one of the other grounds that are discussed. The other grounds weren't there, were they? I mean, it's not a successive petition, is it? Well, actually, it was. It was his second California Supreme Court habeas petition, and also it might have been a piecemeal denial. Those are issues that if he wins here, he will have to deal with at the next stage, which will be the procedural bar stage. Right here, we're at the very first stage, which is timeliness. But it's entirely plausible, given this was his second California Supreme Court habeas petition, that the denial was not because of timeliness, but because it was a successive petition, or because of piecemeal litigation putting only certain claims in certain petitions. So it's ambiguous, and based upon that fact, statutory tolling should have applied in the first place. With regard to the equitable tolling issue, we've set forth two reasons why we believe equitable tolling should have been applied in this case. Number one, because of his reliance on the pre-pace case law of this court, the Dictado case, which said that even untimely, California— Let me stop you. Even before you get there, I guess, you've got to tell me why the district court didn't get this issue. Well, Your Honor, I think the district court did. Well, I guess that's my big problem, because in order for me to look at it, I've got to find that the district court had equitable tolling in front of it. Well, it certainly had equitable tolling with regard to the ineffective assistance, but if I could point the court to excerpts of records, pages 68, 69, and 70, on those three pages, Mr. Wafer, in his pro se pleadings, goes into a fairly in-depth discussion of the Pace case and also the Artoos case, which, of course, is the U.S. Supreme Court case which preceded Pace, and he talks about the development of the law with respect to whether a non-timely petition tolls pursuant to 2244, and when he's done talking about those three cases, he says that, and I'll quote from page 70, petitioner in the underlying case by federal court standards has shown and established good cause for delay, thus allowing for equitable tolling. And so while it certainly wasn't presented in the manner I presented it in the opening brief for the uncertified issue, it was there. It was in his opposition to the government's motion to dismiss. It wasn't addressed by the magistrate judge in the report. Well, and it's a little difficult because the bottom line on your equitable tolling issue is that unless I take affidavits you want to string along with your appellate brief that the district court never got a chance to look at, I really can't tell that any letter says what you say it says. Somebody should have had a hearing about that. We had all this chance to have the hearing down there in the district court where it ought to be held, and it seems a little uneasy to me that now I'm supposed to look at an affidavit which was cobbled up 12 days before the brief was filed and suggest that all of a sudden this issue was argued below, and now it's a great deal for me to come about and say something about now. Well, Your Honor, I certainly agree that the affidavit and the letters were not put before the district court, and I guess I have two responses to that. Number one, I understand the court's concern considering issues that are in the record now that were not in the record below, and if the court feels that an evidentiary hearing and consideration of those issues was proper, then we could stay this case remanded to the district court for further proceedings in light of these additional documents and also in light of the fact that I think these issues were presented below and just were not decided by the district court. And then there's another problem, I guess. It seems a little unlikely that one could argue that one didn't know about the issue then because it's sure that the case that you want to now rely on, which would give us an idea that equitable tolling might even be something we ought to look at, that Harris, they were non-concerned about any lack of precedent, and they argued equitable tolling to their district court pretty straight. Well, that is correct, Your Honor. And so, therefore, you haven't got to wait for Harris in order to make the argument. Well, that's true, but one thing I would note... I mean, if one counsel could make the argument or one litigant, and Harris had a litigant, here we have a litigant. If one can make the argument and go through the appropriate situation to get there, it doesn't seem to me that one can now argue on appeal, oh, my, it's because we didn't know because Harris wasn't there. Well, I agree that, obviously, Harris raised that prior to Harris' case in this court. Well, sure. But, number one, Mr. Wafers, unsophisticated... Was Harris represented by counsel? Below? I don't believe so. I don't believe so. Let me ask you about the letter. Are you telling us that the letter that said, Excess of Record 37 was never introduced in the district court? That's correct. Mr. Wafers' focus in the district court was on ineffective assistance, the failure of the attorney to file the petition for review, and then what happened subsequent to that, telling him he would file the ineffective assistance on himself in the first habeas petition, which was very bizarre, which he did not do, and then that required the filing of the second petition. So the ineffective assistance, which was addressed at length in the district court, went way beyond just missing a deadline. I know this court, the Ninth Circuit has held in the past that generic, ineffective assistance, missing a deadline may not be extraordinary. I think that's extraordinary, but the courts have held that in some situations it is not. But in this situation, not only did counsel miss the petition for review filing date, he then tried to walk Mr. Wafers through the habeas process, and in doing so, really led him from one landmine to another in advising him that he was going to file things in the first petition, which he did not file, then helping him file a second petition, which is the one that's at issue in this case, with regard to the reference to the N. Ray Clark denial by the California Supreme Court. One issue regarding Harris, this court doesn't have to accept the letters or the declaration to find the reliance on the law. In Harris, the Ninth Circuit, the panel of the Ninth Circuit, found that the litigant presumably relied upon it. I don't think there was any evidence in Harris. No, I think there has to be something. Otherwise, everyone could, after the fact, say that they relied on the laws. I think there has to be something in the record indicating a reliance on Harris. I'm not convinced that we can presume there was reliance on. I know the letters weren't presented below, but clearly the attorney was communicating to Mr. Wafer, while they were working their way through these state court challenges, that don't worry, these will toll the statute. It's as clear as day. And so Mr. Wafer was relying on. The problem that I have with the letters is that the letter that you suggest says that he's relying on some case to get to where he needs to go doesn't say anything about relying on some case. It just says, I think by filing these, I'm going to be able to do what I need to do. And I guess one can give some inference to those situations. But I guess my question is, it seems to me, given the state of this record, that the factual determination that you want to rely upon to get here was never presented to the district court. They took time out to have a hearing. So how can I say it was ever presented to the district court? And if it wasn't presented, how do I meet the standard of review? That is, if you didn't give it to the district court, why should you argue it here? Well, with regard to the end of Your Honor's question, it's not unfair to the government. The government knew these letters were out there, I assume. Well, it certainly isn't a question of law. That's one of the standards. It's a question of fact, because we've got to give inference to those particular letters. It isn't something that we didn't know about, because if old Harris could argue it, certainly this petitioner could argue it. So how do I get past the first standard of review, which is should have presented to the district court before I presented to you folks, and therefore I'm stuck with I either buy your statutory argument or you're done. I don't send it back for more chances. Well, I think in this case Your Honor could. This is a gentleman who's serving life in prison without parole for a very, very unusual murder theory. But what case says that if you don't present the case to the district court in the first place, and now you want me to buy it, and I find you didn't present it, and I don't find it to be a question of law, and I don't find it to be something that you couldn't have known about and argued, because another guy did the same thing and won, what case says at that point I'm supposed to remand? In general, the case law says you just lose that one because you didn't present it. Well, certainly no case law says that you have to send it back to further develop that practice. What case law says I even have discretion to send it back? Well, I think Rule 10E3 of the Federal Rules of Appellate Procedure, which deals with records, it gives the court of appeals discretion to handle other issues concerning the record. Well, but this isn't a record issue. I'm not telling the district court to send me some record they've already made. I'm going to send it back and say, oh, go make another decision about something you didn't consider last time, and then I'll decide it. Isn't that what I'm doing? Well, again, it's our position that it was in there. It was in his opposition. It was in where? It was in his opposition. But the letters weren't. The letters were not. The letters were not. But the issue was there. And so because I think the issue was there, if the court's concerned about these letters which were not in the record with regard to this issue in the district court, again, this is his last chance. This is his last chance to have legal recourse for, again, what is an extremely unusual murder theory. And I think we should give the district court. Let me ask you one last question about this, which I guess was not in front of the district court either but which concerned me. What was his case in the beginning? What wasn't appealed to the California Supreme Court? His entire direct appeal. Well, his entire direct appeal really concerned what? It concerned Perretta. It concerned denial of a Marston motion. It concerned denial of a Wheeler motion. It concerned denial of a mistrial based upon testimony before the jury that he was shackled at trial. And it concerned insufficient evidence regarding this very, very unusual murder theory. This isn't a habeas case where we're going to battle over procedural issues and then have throwaway habeas issues. These are legitimate issues that he had on direct appeal. Legitimate issues that were not presented to the California Supreme Court because of his attorney's failure to file the petition for review. And if he gets to the merits on habeas here in federal court, these are substantial issues that I think will present substantial issues to a panel regarding or to a district court regarding whether his trial was fundamentally unfair. All right, thank you, counsel. You've exceeded your time. We'll give you a minute for rebuttal. Thank you very much. May it please the court, Deputy Attorney General David Wildman for the respondent awarding. Clark is generally known for being an untimeless bar where there's no pinpoint page citation. Counsel, may I ask you about the letters that were submitted with the record? Why didn't you move to strike those on the record? Well, they weren't presented below. Exactly. So why didn't you move to strike them from the appellate record? It was originally presented as part of an uncertified issue. So having very little to do with the Ingray-Clark citation, which was the certified issue was the issue that was being briefed. That would have alerted us to the issue that we're now grappling with. I think it's really kind of chancy not to respond. I know that that's the practice of your office, not to respond to uncertified issues, but that's kind of dicey sometimes for reasons such as this. Because to be honest with you, I didn't realize that these letters were not part of the record. And so if a motion had been filed alerting us to that, it would have made a huge difference in the way we approach the case. I can see that now because having not responded initially to the uncertified issue, it's now become front and center of what this Court is looking at. Right. Where we simply did not look at it when the original briefing occurred. Right. I understand. Please proceed. So the California Supreme Court has looked at Ingray-Clark as being primarily for timeliness, and that's the best authority on its own cases. This Court, as well, has looked at Ingray-Clark where there's no pinpoint citation. It's generally referring to timeliness. And that's not unusual. There are many cases, almost every case, there are numerous points of law, and there's one point that is looked at as the holding if there's not a pinpoint page citation. That's what attorneys and judges look to refer to it. So for those reasons, I would submit that Clark is an adequate and clear timeliness bar, as long as there's no pinpoint page citation pointing to successive petitions or other procedural bars. And for that reason, the statutory tolling means that the one-year period did expire before the federal petition was filed in this case. Moving to the equitable tolling issue, and actually the two issues of equitable tolling, I'd first like to point out that it's positioned in my office that there is no equitable tolling applicable to the ADPA. The United States Supreme Court has not ruled on that issue squarely. I realize, however, that the Ninth Circuit has said in numerous cases that there is equitable tolling. So assuming that there is equitable tolling, it doesn't apply in this case. There's no outside influence that made it impossible for a petition to file a timely petition. First of all, could he know what was timely? I mean, if the law in our circuit is that it's timely as long as there's a pending petition, that that tolls it, why don't we just presume reliance in a situation like that? Well, certainly at the time that he filed his federal petition, dictato was the law of the Ninth Circuit. In fact, my office in filing in the district court recognized that dictato was the law and immediately began briefing the merits. It wasn't until Pace came out and was published that we then turned back to the timeliness issue and asked to resubmit the issue of timeliness. So I agree that it was law of the land. However... So potentially, may I ask you, when Pace came out and you proceeded to brief timeliness, was the issue ever raised regarding reliance on the prior case law? Was that issue ever discussed in the district court or brought up? No, it wasn't. There was not a representation that the petitioner relied on dictato. I'm not clear the petitioner knew all the cases and the sites to begin with. He was an appropriate petitioner. Right, but he talked about the fact that he talked about the cases that, you know, the courts have held that a petitioner's application for post-conviction relief is properly filed even when it's procedurally barred. So doesn't that reflect that he was relying on the case law? If we construe it as we do for pro per petitioners, if we construe it broadly, does that reflect reliance? One could presume that he relied on it in federal court. However, I'm not sure one can make that assumption going back to state court. I think what he did is he listened to his attorney or actually wasn't his official attorney but his former attorney at that point on how to proceed in state court. But under Harris, would that be enough to presume that he relied on the prior case law? It appears that that's similar to what occurred in Harris. I would respectfully disagree with the conclusion that it was impossible for this petitioner to file a timely petition, however, because at the time that he was proceeding through the state court proceedings filing, state habeas petition after state habeas petition, both in the Superior Court, the Court of Appeals, various ones in the Supreme Court. Although dictato may have been the law in the Ninth Circuit, there were other conclusions that could be come to. The Third Circuit, as we know in Pace, in the cases that Pace filed, Fahey and Merritt, had an opposite conclusion. And when you have two circuits that have different conclusions on an issue, there's a strong possibility, and indeed we know now that it occurred, that the U.S. Supreme Court may take it up in cert and come to an opposite conclusion. But you were willing to forego the issue and just brief the Merritts until Pace came down. So it sounds like you were relying on it just as much as he was. Certainly. Dictato. Certainly. And just as he was, it was a tactical decision to proceed in that direction. The point is that it wasn't impossible for him to file a timely petition. Well, when Pace came down, as of that date, he was out of luck if Pace was applied, wasn't he? Yes. So there's no, once Pace came down, he didn't have a little window that it was still open, even under Pace. That certainly was the position that my office took and that the district court took, yes. The district court decision after Pace came down wasn't for a year, was it? Pace came in 2005 and the district court decision coming in 2006? I believe that's correct. Was there any amendment by the petitioner or any difference in his view or difference in his argument after Pace came down than his argument prior? I mean, it seems to me that one makes a statutory argument based on the prior Ninth Circuit case law, and one doesn't have to make too much of an argument about that until Pace comes down. It seems to me further that since the district court had his petition in front of it at the time Pace came down in 2005, if one really wants to raise this issue before the district court, one then sees Pace and says, well, Pace has kind of killed me, maybe I better go for what Harris went for. So that's why I'm asking the question. Was there any change in tactic about equitable tolling at that point? Well, I believe that he certainly did argue in his objection as he mentioned Pace. He did not make the same argument that Mr. Harris made in his district court. What happened is he comes up on the Ninth Circuit and he gets a good attorney who was able to make that argument that he did not make in the district court. So is there in this record, I guess that's the big problem that I see, which my good colleague Judge Rawlinson has asked you, is there in this record such that we can infer based on him being a pro se person that this argument was presented to the district court? It certainly was not an argument that the district court has... Would anything in this record which would lead us to that event take counsel's argument that he said equitable tolling in one phrase? I do not believe the Harris v. Carter argument was made in the district court. Well, not the precise Harris argument, but was the premise discussed about if a claim is filed timely, then it preserves the federal claim. Was that general premise mentioned in the petition? No. I mean, the thing that is great about her question is the government is not here just representing one side here. The government has a responsibility bigger than that, and that's why I'm asking you straight on. Can I really determine on this record that there is no way this argument could have been presented to the district court? Because at that point, he's forfeited, and I am really on that precipice. That's why her question is important for you to answer correctly. Well, certainly the argument wasn't presented to the district court, and the letters were not presented there. But what about in the petition, the pro per petition? Is it your representation that there is nothing in that pro per petition that can be construed to raise the issue that an untimely petition nevertheless tolls the statute under our prior case law? You don't think that broadly read, the petition can be interpreted to include that issue? No, I think his argument, especially in the objections to the R&R, are looking towards Clark and whether Clark can be read that way. Can I ask you about the petition? The original habeas petition? Right. No. Okay. That's your answer? You've exceeded your time. Thank you. One minute for rebuttal, please. Thank you, Your Honor. The original petition was filed in July 2004. Pace came out in April 2005. The brief that I'm talking about on pages 68 through 70 of the opposition, it wasn't opposition to the R&R, it was an opposition. It's titled strangely, but it's in opposition to the motion to dismiss. That was filed in, I believe, 8-06, and that is Mr. Wafer's best response to Pace. That's what I was referring to. I mistakenly called it the petition, but it was his objection to the motion to dismiss the petition. Right, right. The record reference you just gave, where is it? That's from the docket. I believe it's docket entry number 19. It starts at page 55 of the excerpt. Right, and the pages where he discusses Pace and R2s are 68, 69, and 70. Just to wrap up, that was his best response. Pro se, unsophisticated, that was his best response to Pace, and I think that this Court should give him the benefit of the doubt as a pro se litigant and find that this issue was fairly presented and rule on this case in light of the 2008 case. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the Court. The next case on calendar for argument is Milligan v. American Airlines.
judges: Canby, Rawlinson, Smith N. R.